(100 South. 537)

No. 26251.

## ILLINOIS PURE ALUMINUM CO. v. BLANCAND.

(March 3, 1924. Rehearing Denied by Division B May 12, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Sales ⚖=22(3)—Evidence held to show contract for sale of aluminum sets.**

   Where plaintiff told defendant that, if he would obligate himself to take specified number of aluminum sets, plaintiff was prepared to take care of it and that in that case he would get early delivery, and defendant unequivocally accepted proposition, the contract became complete.

2. **Sales ⚖=418(2)—Damages for failure to deliver determinable by market value prevailing at time of breach.**

   Where, under contract of sale of aluminum sets, the merchandise was to be delivered not

later than March, and goods were never delivered, breach occurred on failure to deliver in March, and damages recoverable were to be measured by market value of merchandise then prevailing.

3. **Sales ⚖=418(3)—Measure of damages for breach by seller of contract of sale stated.**

   On breach of contract to deliver aluminum sets sold, whereby purchaser was compelled to go to the market to buy them, measure of damages was difference between market price and contract price.

4. **Costs ⚖=260(4)—Damages for frivolous appeal held not recoverable.**

   Where defendant appealed from judgment rejecting his reconventional demand, no damages as for frivolous appeal could be granted because, although judgment for plaintiff on his main demand was correct, defendant withheld payment until final determination of counterclaim could be had, in view of Code Prac. art. 375.

Appeal from Civil District Court, Parish of Orleans; Percy Saint, Judge.

Action by the Illinois Pure Aluminum Company against Gus Blancand, with reconventional demand by defendant. From a judgment rejecting defendant's reconventional demand, he appeals. Judgment set aside and rendered.

Sanders, Baldwin, Viosca & Haspel, of New Orleans, for appellant.

Dart, Kernan & Dart, of New Orleans, for appellee.

By Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.

ROGERS, J. Plaintiff sued for $3,032.46 on an open account. Defendant reconvened for $15,375 as damages for breach of contract. Judgment was for plaintiff as prayed for. Defendant's reconventional demand was rejected. This appeal is by defendant. Plaintiff, by answer, alleging the appeal to be frivolous, claims damages therefor.

Defendant admits the correctness of the account sued on, but denies any indebtedness

to plaintiff because of the larger sum which he avers plaintiff owes him. The only issue is on the reconventional demand.

Defendant's claim for damages is based on an alleged verbal and written contract, made during the early part of October, 1919, for the delivery, not later than January, 1920, of 10,000 sets of aluminum ware at $5.77 per set.

Defendant alleges plaintiff's failure to deliver, due demand, and putting in default, and that, as a result of said breach, he was forced to purchase the equivalent of the merchandise, partly at $6.10, and partly at $7.71, per set, or a total of $15,375 more than the price at which plaintiff had agreed to deliver the said sets of aluminum ware.

The negotiations which resulted in the contract declared on by defendant were opened by defendant's letter of August 2, 1919, when he wrote plaintiff for quotations on certain items of aluminum to be delivered at the rate of 1,000 a week for 10 weeks. On August 4, 1919, plaintiff replied, requesting further information. The required information was furnished by defendant's letter of August 16th. Plaintiff answered, under date of August 19th, with a specific proposition, giving details and price of $5.77 per set. By telegram of September 22d defendant accepted the proposition of August 19th, requesting delivery of a carload immediately and an additional carload every week. until further notice, and asking when first delivery might be expected. This telegram was confirmed by letter next day. On September 2, 1919, plaintiff wrote defendant, acknowledging receipt of his telegram. In this communication, which is the pivotal one in the case, plaintiff says, among other things, "While we are greatly oversold we are grateful for the order and will do what we can with it, * * *" and then states, "Today it don't look as though we could take on an order of this size and make shipment sooner than 90 days." The letter then refers

to the delay in obtaining deliveries of the raw material from the mills, and repeats, "We figure on about 90 days to get it, but it don't always get here in that length of time, so you can figure your delivery date accordingly." The next paragraph of the letter reads:

"We are willing to accept your order for a carload lot (approximately 1,500 sets) at the price of $5.77 net, providing you are willing to wait the required length of time for delivery. If you want to make your order read 10,000 sets we are prepared to take care of it now, and you will then be sure of getting the goods the early part of next year. You, of course, understand that we must have .the definite order expressed by quantities before we can go ahead and order the raw material from the mills in the quantities you specify."

This proposition was accepted by defendant, who, in his letter of October 2, 1919, placed his order specifically for 10,000 sets, and requested that 1,500 sets be furnished as soon as possible, and 1,500 sets be furnished every week thereafter until the number of sets called for by the order had been delivered.

On October 8, 1919, plaintiff, replied to defendant's communication, using, in the course of its letter, the following language:

"As requested we have increased your order so that it now reads 10,000 No. 10 sets to be furnished as soon as possible and 1,500 approximately every week thereafter until the 10,000 are disposed of."

Some time between October 2, 1919, and October 8, 1919, defendant called upon plaintiff, at its office at Lamont, Ill. During this visit the contract was discussed. Defendant testifies that in the course of the discussion the acceptance of the contract was acknowledged, and the date of delivery was definitely fixed for January, 1920, with the possibility of the delivery being made in December, 1919.

This testimony of defendant in regard to the delivery is denied by the representatives of plaintiff who handled the transaction, but

we are not impressed with their testimony, which is evasive and uncertain.

On October 9, 1919, defendant, by letter, which evidently crossed plaintiff's letter of October 8, 1919, offered to increase his order to 20,000 sets and to enter an order for other items of aluminum ware. This letter went without reply until October 27, 1919, when plaintiff declined the additional offer, opening its letter in the following language:

"We have been withholding a reply to your letter of October 9, hoping against hope that conditions in the raw material market would materially change so we would be in a position to take on the additional business specified."

The letter also contained the following statement:

"We have, of course, accepted and filed your original order calling for 10,000 sets."

Being desirous of obtaining the merchandise contracted for as soon as possible, because of the demands of his business, defendant on October 30, 1919, addressed plaintiff a communication, requesting to be advised of the approximate date of the first delivery, and further, whether, if carload shipments could not be delivered at once, defendant could not "make drop shipment delivery in 100 or 200 lots immediately."

Plaintiff answered this letter under date of November 1, 1919, using the following language:

"As explained to your Mr. Blancand we are several months behind in deliveries and it was not anticipated when your order was taken that delivery would start before the first of the year. Of course, we are making every effort to catch up and it is possible that we will be in a position to make you a substantial shipment before that time."

Defendant again wrote plaintiff as of date December 4, 1919, requesting information as to when delivery would be made. This original letter was produced in evidence, and indorsed thereon appears the word "Discourage." The representative of the plaintiff who made the indorsement, when interrogated in regard thereto, offered the absurd explanation that he wrote the word to indicate that he was discouraged. However, when considered in connection with the sudden advance in the price of the raw material which occurred about this time, and the character of plaintiff's subsequent correspondence, we agree with counsel for defendant that the proper interpretation to be given to the memorandum is that plaintiff intended to discourage defendant with a view of having him cancel the contract.

Thereafter defendant wrote numerous letters in the endeavor to obtain favorable action from plaintiff, but without avail; all of plaintiff's replies being of an evasive character, and written with the evident intention of "discouraging" defendant. The last of the series of letters was the one written by plaintiff to defendant under date of November 16, 1920. The tenor of this letter plainly indicated that plaintiff did not intend to deliver the merchandise originally contracted for, and defendant thereupon ceased his efforts to have plaintiff comply with its agreement.

[1] It is our conclusion that the evidence, a brief statement of which we have just given, establishes the contract declared on by defendant in his reconventional demand. We have reached this conclusion from a careful consideration of the voluminous correspondence itself, and without regard to the testimony adduced relative to the alleged verbal agreement entered into at Lamont, Ill., on the occasion of defendant's visit to that city. In passing over that feature of the case, we feel constrained to say, however, that defendant's version of the conversation and discussion finds ample support in the record.

In its letter of September 24, 1919, referred to supra, plaintiff, after reviewing the state of the raw material market, pointed out to defendant the inadvisability of confining his

order to carload lots for the reason that he would be compelled to wait the required length of time for delivery, and suggested that if defendant would obligate himself to take 10,000 of the aluminum sets, plaintiff was "prepared to take care of it" (the suggested order) "now, and you will then be sure of getting the goods the early part of next year."

This was a distinct offer of a specific number, with the inducement held out of prompt delivery, if accepted. Defendant did expressly and unequivocally accept the proposition, and the contract thereupon became complete. In its letter of November 1, 1919, plaintiff, after stating it was behind several .months in its deliveries, further stated, in reference to defendant's order, " * * * It was not anticipated when your order was taken that delivery would start before the first of the year." Again in its letter of December 11, 1919, in reply to defendant's letter of December, 4, 1919, plaintiff informed defendant that from the present outlook shipments would not be made before March or April. And although defendant professed himself willing to accept the deliveries if made during those months, the shipments were not only not made at that time, but as a matter of fact they were never made.

We think the record shows a complete breach of contract for which plaintiff must respond in damages. Defendant testified his damages were as follows:

| | | |
|---|---|---:|
| 3,000 | sets at $6.14 | $18,420 00 |
| 1,200 | sets at $6.66 | 8,124 00 |
| 5,800 | sets at $7.71 | 44,718 00 |
| 10,000 | sets | $71,262 00 |
| Contract price of 10,000 sets at $5.77 | | 57,700 00 |
| Damages recoverable | | $13,562 00 |

However, the record shows that the 3,000 sets referred to were purchased in February and March, 1920, the 1,200 sets were purchased in April, May, and June, and the 5,-800 sets were purchased from July to November, 1920, both inclusive.

[2, 3] Inasmuch as plaintiff's obligation was to deliver the merchandise contracted for in January, 1920, and certainly not later than the month of March of the same year, the breach occurred upon failure to make deliveries at that time, and the damages recoverable must be measured by the market price of the merchandise then prevailing. Defendant's testimony shows that the price was $6.14 per set, his reconventional demand averred $6.10 per set, and we do not think he should be allowed recovery beyond his allegations. The difference between $6.10, the market price, and $5.77, the contract price, is 33 cents per set, or a total of $3,300 on the 10,000 sets, which is the amount of recoverable damages suffered by defendant.

Plaintiff's claim for damages for a frivolous appeal is based upon defendant's failure to pay the admittedly correct judgment rendered in plaintiff's favor on the main demand.

Under the express provision of the Code of Practice, art. 375, a resident defendant sued by a nonresident plaintiff may reconvene in the suit brought against him upon any cause of action, although his reconventional demand be not necessarily connected with, or incidental to, the main cause of action.

The manifest purpose of the law is to permit our citizens to assert such counterclaims as they may have against nonresidents seeking judicial enforcement of their demands against them. ·

[4] In withholding payment of the amount of the judgment against him until a final determination could be had of his counterclaim against his creditor, defendant was acting both within the letter and spirit of the codal provision.

The demand for damages for a frivolous appeal is therefore refused. ˈ

Defendant's claim of $3,300 is offset pro tanto by plaintiff's claim of $3,032.46. The balance in defendant's favor is $267.54. In

the interest of simplicity, we think it preferable that the judgment should go in defendant's favor for said balance, rather than in plaintiff's favor on the main demand and in defendant's favor on the reconventional demand.

For the reasons assigned, it is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside; and it is now ordered and decreed that there be judgment in favor of Gus Blancand, defendant, and against the Illinois Pure Aluminum Company, plaintiff, in the full sum of $267.54, with legal interest thereon from August 2, 1922, until paid; plaintiff and appellee to pay all costs.

Rehearing refused by Division B, composed of DAWKINS, LAND, and LECHE, JJ.