## DUGAS v. LEWIS–CHAMBERS CONST. CO., Inc.*

### No. 17015.

Court of Appeal of Louisiana. Orleans.
March 13, 1939.

Monroe & Lemann, of New Orleans (Walter J. Suthon, Jr., of New Orleans, of counsel), for appellant.

Carville & Carville, of Plaquemine, de Lesseps Story Morrison, of New Orleans, for appellee.

JANVIER, Judge.

This rather involved litigation results from two claims—one originally held by Jumonville Pipe & Machinery Company, Inc., domiciled in the Parish of Iberville, against the Lewis-Chambers Construction Company, Inc., domiciled in the Parish of Orleans, and which claim plaintiff, Dugas, alleges was assigned to him for a cash consideration and which claim was for the purchase price of certain steel plates; the other claim being held by the Lewis-Chambers Construction Company, Inc., against the Jumonville Pipe & Machinery Company, Inc., for damages for the tortious appropriation by that company of a steel

boom which the Lewis-Chambers Company claims was its property.

The Lewis-Chambers Company has at all times admitted its indebtedness in the sum claimed, to-wit, $698.30, for the price of the steel plates, but it has also at all times asserted its right to use its counter-claim for $4,500, either in reconvention or as an offset pro tanto, and it contends that the purported assignment by which Dugas, plaintiff, alleges he acquired the claim of the Jumonville Company, is not real, but is a simulation, and was executed solely for the purpose of interposing Dugas as party-plaintiff so that the defendant, Lewis-Chambers Company, might not be able to avail of its counterclaim against the Jumonville Company either as an offset pro tanto, or in reconvention.

The Lewis-Chambers Company maintains further that, even if the assignment be given effect, there cannot be transferred thereby any greater rights than were possessed by the assignor, and that, since the assignor—had it brought suit in the Parish of Orleans—must have submitted to the presentation in that suit of the reconventional demand, likewise its transferee, or assignee, must so submit.

Plaintiff argues, however, that, if he bought the said claim in good faith and without knowledge of any infirmity, or of any personal counter-right as against the assignor, he is not affected by any such right.

Defendant also declares that, regardless of whether the assignment is a real one, at the time it was executed there already had been effected, by the operation of law, compensation which had extinguished it because of the effect of Arts. 2208, 2209 of the Civil Code, under which compensation takes place automatically between two debts which are equally due and liquidated, and that, therefore, when the transfer was attempted to be made, the smaller debt—the subject of the transfer—had already been extinguished by the effect of such compensation.

Dugas counters with the argument that, conceding that such compensation is automatic and takes place at once between two debts equally due and liquidated, it has not taken place here because the debt claimed by defendant is based on tortious wrongful conversion, and, therefore, is not liquidated.

While no replication or rejoinder is permitted under our practice, a further contention of the Jumonville Company is that, even if it be held that the assignment is not a real one, still the claim of the Lewis-Chambers Company cannot be asserted here because that claim—the Jumonville Company declares—is properly against the Jumonville Motor Company, another corporation, and not against the Jumonville Pipe & Machinery Company, Inc., the assignor of the claim herein sued on.

In the court below there was judgment for Dugas, as prayed for, sustaining the reality and validity of the assignment, dismissing the reconventional demand of the Lewis-Chambers Company, and rejecting its alternative attempt to use its said claim as an offset pro tanto, the court holding that, in the face of a valid assignment, the debtor could not, as against the assignee, either as an offset or as a reconventional demand, present a claim against the assignor, and refusing to consider the counter-claim at all.

On appeal by the Lewis-Chambers Company, we, on first hearing, held that the evidence justified the holding that the assignment was genuine, and we further held that, since the assignment was genuine and not a simulation, Dugas became the owner of the claim against the Lewis-Chambers Company, and that that company could not assert against him any claim which it might have had against the Jumonville Company. On application for rehearing it was said that we had not given consideration to the fact that certain evidence tendered by defendant and tending to cast suspicion on the reality of the assignment had been excluded, and we concluded to reopen the matter in order to consider whether the facts already shown are sufficient to justify the belief that there was, in fact, no true assignment; whether, in other words, the purported assignment was not in reality merely an agreement that Dugas might bring the suit in order to avoid the possibility of defenses which, it was known, would be immediately availed of should the Jumonville Company appear as plaintiff in Orleans Parish, and, if the record, in its present condition, did not justify such a conclusion, then to consider whether the excluded evidence should not have been admitted.

We think it advisable to again set forth the facts and to note, particularly, the chronological order of certain occurrences.

In the first place, the Jumonville Company and Dugas are domiciled in the

Parish of Iberville, while the Lewis-Chambers Company is domiciled in the Parish of Orleans. We state this fact because it has significance in that, had the Jumonville Company, in its own name, gone into the Parish of Orleans to bring this suit, it would have subjected itself to that venue so far as might be concerned any counter-claim which the Lewis-Chambers Company might have had against it, for Art. 375 of our Code of Practice provides that: "* * when the plaintiff resides * * * in the State, but in a different parish from the defendant, said defendant may institute a demand in reconvention against him for any cause, although such demand be not necessarily connected with, or incidental to the main cause of action; * * *".

That the Jumonville Company well knew that there was more than grave danger that such a counter-claim would be asserted is not open to question, for, only a very short time before the purported assignment was executed, and only a little more than a month before the suit was filed, the Jumonville Company, through its attorneys, was so advised by counsel for the Lewis-Chambers Company. We attribute significance to the following events and dates:

On March 15, 1937, counsel for the Jumonville Company, at that time obviously still the owners of the claim sued on, wrote to the Lewis-Chambers Company demanding payment of that claim.

On March 18, counsel for the Lewis-Chambers Company answered stating that payment would not be made because of the counter-claim. The final statement in that letter reads as follows: "If a suit is filed by you, we will of course file a counter-claim on behalf of our client". That letter was not answered. But, on April 28, 1937, the document relied upon as an assignment was executed and, on May 10, 1937, the assignee, Dugas, went into the parish of the domicile of the Lewis-Chambers Company and filed this suit.

Had the Jumonville Company itself filed the suit, its officials well knew that the counter-claim would have at once been presented, because, as we have shown, they had been so advised and because the matter was in the hands of their attorneys, who, of course, well knew of the provisions of the codal articles cited and who, therefore, were aware that, though the two claims were not related, or "necessarily connected"—since the parties were diversely domiciled—the one claim might be presented in reconvention to the other.

So much for the knowledge of the assignor. What about the assignee?

There are many facts, each of which may be said to be indicative, but not controlling if considered singly, but which, if considered together, give, we think, considerable color to the charge of simulation. But there is one fact so tremendously significant that we cannot but give to it sufficient weight to result in the ultimate determination of the question of simulation adversely to the contention of the assignee. This fact is that the Jumonville Company and Dugas, when the assignment was executed, were represented by the same attorney, and that attorney knew, when he permitted Dugas to accept the assignment, that only a few days before—as attorney for the assignor—he had been advised by counsel for the Lewis-Chambers Company that, if the Jumonville Company should present its claim in suit, "we will, of course, file a counter-claim on behalf of our client."

It is impossible to believe that the attorney did not discuss this matter with Dugas. The attorney is a competent, reputable member of the bar. If the recitals of the assignment were true, the assignee was paying cash for this claim. Surely his attorney did not let him do so or did not let him surrender any other valuable right as consideration without advising him of what he himself knew full well: that a counter-claim would be presented. In fact, it is admitted that Mr. Dugas discussed with the attorney the probability of his being able to collect the amount of the claim which he was about to purchase. He says that he spoke to the attorney about it and "he said it was collectible". Surely the advice that "it was collectible" did not involve an opinion on the solvency of the debtor, nor did it involve any question concerning the validity of that claim, because the Lewis-Chambers Company had never disputed the claim but had based its refusal to pay solely on its insistence that its counter-claim be recognized. The only question, then, which the attorney could have had in mind when he advised that it was collectible was whether or not the counter-claim could be presented against the assignee. If, then, the assignee bought this claim with full knowledge of these facts, he surely cannot be heard to contend that he was a purchaser in good

faith and without knowledge of any infirmities or defects, or counter-claims. We cannot but view this fact as showing conclusively that Dugas had full knowledge of the pendency of the counter-claim when he accepted the assignment.

Another fact to which our attention is directed is the variance between the allegation and the proof concerning the consideration given by Dugas for the assignment. In his petition he alleges that he "* * * acquired the said above mentioned and described account * * * for the price and sum of Four Hundred Fifty and no/100 ($450.00) Dollars, cash, * * *", and it is so recited in the assignment itself: "* * * that for the price and consideration of Four Hundred Fifty and no/100 ($450.00) Dollars, cash in hand paid, the receipt of which is hereby acknowledged and for which acquittance is granted, it does hereby sell, transfer and assign, unto: Junior B. Dugas, * *, * *".

Yet, in his testimony Dugas does not claim that he paid cash for the assignment, but, on the contrary, asserts that it was given to him as a dation en paiment for a balance of $450 which the Jumonville Company owed to him.

We considered this variance and, in our original opinion, discussed the effect of it and, by inference at least, held that, since the answer did not contain a denial of the allegation that a cash consideration had been paid, plaintiff was within his rights in showing the true consideration, even though that consideration was not the one originally alleged. We find it unnecessary to reconsider that question in view of our conclusion that the purported assignment was not in fact, a real one, but we refer to the variance and uncertainty as to what was the consideration merely because it is a circumstance throwing further suspicion on the entire transaction. If any real transfer had been intended, we believe that the purchaser would have known with certainty what consideration he gave therefor.

Another circumstance to which defendant points as showing that Dugas was interposed and was not the real party at interest is the fact that he was admittedly used by the Jumonville Company in the same capacity in negotiating with the Chalmette Petroleum Company for the purchase of certain real estate. It is true that the reason given for this is that the Jumonville Company knew that, if the owner of that real estate was aware of the real purchaser, it would have demanded a much higher price, and that, therefore, it employed Mr. Dugas to negotiate in his own name with the understanding that, if he purchased the property, it would be purchased from him by the Jumonville Company. Of course, in this transaction there is nothing suspicious if considered by itself, but, viewed in connection with the other facts to which we have alluded, we think it adds some slight force to the charge of simulation.

Counsel for defendant offered other evidence which, it is maintained, would throw further light on the question of whether the assignment was made in good faith, and we feel that, if this evidence should show what counsel states it would, even further suspicion would be thrown upon the good faith of the Jumonville Company. But we already have no doubt upon that question and, in fact, the good or bad faith of the Jumonville Company is not the real matter at issue, except insofar as it may throw light upon the knowledge which Dugas had when he accepted the assignment. And this knowledge is important because, in view of such knowledge—which we are convinced he had—we find it impossible to believe that he unconditionally bought the claim on which he is now suing. Of course, there is no positive proof or direct evidence establishing the simulation, but there seldom is in such cases, and that is why, in the production of evidence, the usual rules concerning relevancy are somewhat relaxed, for often suspicious circumstances in other transactions lend color to the charge of insincerity.

"* * * the greatest latitude is permitted in the introduction of testimony where the object is to uncover simulation, and to penetrate the disguises fraudulently adopted by a debtor to screen his property from his creditors." Dickson v. Hynes et al., 36 La.Ann. 684.

"Simulation is rarely susceptible of direct and positive proof. At best, you can resort only to the proof of other facts, from which there is fastened upon the mind the conviction that the simulation is also a fact. The statement of the relations between the parties, and their previous history, gives strong colour to the charge. Fass v. Rice Brothers & Co., 30 La.Ann. 1278.

"Where fraud or simulation is at issue, any act of one of the parties to it, bearing on the issue, is relevant. In such cases a large latitude in the admission of evidence is not merely permitted, but enjoined." (Syllabus.) Gaidry v. Lyons, Sheriff, et al., 29 La.Ann. 4.

"It is extremely difficult to prove simulation or to ferret out fraud, and, but in rare instances, is it susceptible of positive and direct proof; this is the reason of the relaxation of the rule of law, invoked by the plaintiff in this instance." Davis v. Stern, 15 La.Ann. 177.

" * * * when the inquiry is, whether it was bona fide or not, the whole conduct of the party before and after, as well as at the time the contract was entered into, may be properly inquired into, for the purpose of ascertaining its true character. Express evidence of fraud can be rarely given. It has to be gathered from a variety of circumstances, and the detection of it would be greatly impeded by such a limitation as the defendant contends for." Reels v. Knight, 8 Mart., N. S., 267, 19 Am.Dec. 184.

■ Believing, as we do, that the purported assignment was not a real transaction and that its purpose was to permit Dugas to bring this suit in the Parish of Orleans for and on behalf of the Jumonville Company without subjecting that company to the risk of a reconventional demand in that parish, we conclude that, in truth and in fact, it is the Jumonville Company which is party-plaintiff and that, consequently, since it is domiciled in a parish other than that in which the defendant is domiciled, the defendant may assert against it the reconventional demand, although based on a cause of action not necessarily connected with the main demand.

We stated in the beginning of this opinion that defendant makes other contentions; that, even if the assignment was a real one, it could be made only subject to such rights as the obligor might have had against the assignor at the time of the assignment, and that, because of the automatic compensation which takes place pro tanto between two reciprocal debts equally due and liquidated, there could not be an assignment where, because of such compensation, the debt which is sought to be made the basis of the assignment has already obviously been entirely extinguished by confusion. These contentions need not be further considered since we conclude that there was, in fact, no assignment.

■ Of course, we have not attempted to pass upon the question of whether the claim sought to be presented in reconvention against the Jumonville Pipe & Machinery Company is properly asserted against that company as distinguished from Jumonville Motor Company, nor whether such claim is, in fact, due by anyone, because the evidence on all of these questions was excluded below. But, since the judgment on the main demand was rendered without there having been consideration to the claim in reconvention, that judgment must be reversed and the matter remanded so that the reconventional demand may be tried and the judgment thereon rendered in connection with the judgment on the main demand. Moore v. Hamilton, 16 La.App. 630, 133 So. 790. See, also, Illinois Pure Aluminum Company v. Blancand, 156 La. 385, 100 So. 537.

Of course, the Lewis-Chambers Company has not attempted to avail of the reconventional demand as against the plaintiff, Dugas, except to use it as an offset to that claim. But it has asserted the reconventional demand as against Jumonville Pipe & Machinery Company, and, therefore, if, on hearing below, it is determined that it is entitled to a judgment, that judgment may be only against that company and not against Dugas.

It is therefore ordered, adjudged and decreed that the original decree of this court be and it is recalled and annulled, and it is now ordered that the judgment appealed from be and it is annulled, avoided and reversed, and that this matter be and it is remanded to the Civil District Court for the Parish of Orleans for further proceedings not inconsistent with the views herein expressed and according to law.

Original decree recalled; judgment of trial court reversed and case remanded.

WESTERFIELD, Judge (dissenting).

I adhere to the views expressed by me in the original opinion in this case, and, therefore, respectfully dissent.