476 So.2d 1037 (1985)
HERLITZ CONSTRUCTION CO., INC. (Hotel Investors of New IberiaAssignee & Appellant), Plaintiff-Appellant,
v.
Gregory MATHERNE, et al., Defendant-Appellee.
No. 84-612.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1985.
*1038 Marvin L. Jeffers, Baton Rouge, for plaintiff-appellant.
Deutsch, Kerrigan & Stiles, Frederick R. Bott, New Orleans, Breazeale, Sachse & Wilson, Henry D. Salassi, Baton Rouge, Roy, Forrest & Lopresto, Matthew J. Hill, New Iberia, for defendant-appellee.
Before STOKER, DOUCET and KNOLL, JJ.
KNOLL, Judge.
Herlitz Construction Co., Inc. (hereafter Herlitz), the assignee of Hotel Investors of New Iberia, Inc. (hereafter Hotel Investors), appeals the dismissal of its claim for damages against Gregory P. Matherne, AIA Architect, Inc. and Gregory P. Matherne (hereafter collectively referred to as Matherne), and Matherne's errors and omissions insurer, Insurance Company of North America. The trial court ruled that Hotel Investors, Herlitz's assignor, was contributorily negligent which was imputable to Herlitz.
Herlitz assigns for our review two specifications of error: (1) whether Hotel Investor's actions constituted contributory negligence sufficent to deny Herlitz recovery; and (2) if Hotel Investors was negligent, whether such contributory negligence was the proximate cause of its damages. We affirm.

FACTS
The present case, which is one of numerous lawsuits filed by Hotel Investors, was a lengthy trial. All controversies, other than this suit, have been disposed of by stipulated judgment, compromise, or otherwise. We have been favored by the learned trial judge's excellent reasons for judgment thoroughly setting forth the facts, which we incorporate herein:
"Hotel was interested in constructing a Ramada Inn in New Iberia similar to one constructed by Herlitz and financed by New Orleans [Federal] at Port Allen. Representatives of Hotel contacted Herlitz concerning this and Herlitz agreed to modify plans and specifications from Port Allen to fit the New Iberia site and situation and employed Matherne to do this work. Matherne performed these services employing Levy-Kraemer, mechanical engineer, to do that aspect of the work since it had done the mechanical work on the Port Allen project. All plans and specifications bore Matherne's seal, were furnished by him to Herlitz and Hotel, and showed in the legend of each that the work was done by Matherne for Herlitz.
"Hotel used these plans and specifications to obtain a permanent financing commitment from New Orleans [Federal] of $1,700,000.00 at 12% interest. The total commitment was later increased due to the addition of a `convention center' to the hotel project. Interim financing was obtained using the same plans from Louisiana National Bank. Construction contracts were entered into between Hotel and Herlitz and construction got under way in October of 1978.
"In early January, 1979, Herlitz's superintendent on the job site discovered a discrepancy between the architectural and electrical drawings on the one hand and the mechanical drawings on the other affecting numerous rooms. The drawings were transposed in relation to each other. He immediately called this to the attention of Herlitz and Matherne. Matherne instructed him to proceed according to the architectural drawings and not the mechanical which, had these instructions been acted upon, would have resulted in the plumbing subcontractor having to redo some plumbing work which had been `roughed in' in Building B prior to the pouring of the slab (which had not yet occurred) and to rebuild an unspecified amount of plumbing which had been prefabricated by it but not yet installed. Sometime later, Matherne changed his mind considering it would be best for all concerned to follow the mechanical plan and not the architectural and electrical plan and he so informed Herlitz's superintendent after discussing *1039 it with him. He then wrote Herlitz and Hotel advising of this decision.
"Matherne then revised the architectural plans to conform with the mechanical plan which resulted, among other things, in moving the entry door in a number of rooms from one side of the room to the other so that one entered the affected guest rooms at the side of the room near the head of the bed rather than near the foot of the bed as is the normal motel configuration. Hotel was advised by Matherne of the change in mid-January, 1979 through its representative Mr. Mancuso who was also advised by Matherne to obtain approval of the change from the permanent lender. This was not done.
"This change had no adverse effect upon the marketability of the affected rooms or the asthenic [sic] quality of the exterior of the hotel.
"Matherne considered the change minor. Ramada Inn executives were of the opinion the change was not significant.
"Although Matherne released all of the drawings from his office as his own work to the owner and contractor, he did not compare the mechanical and architectural plans to each other. Had he done so, he would have seen the discrepancy between them. It was his duty to supervise the work of the mechanical engineers and to be certain that their work did not conflict with the architectural plans. That is what architects in the area do.
"Had Herlitz or any of its employees experienced in dealing with building plans made a comparison of the architectural and mechanical drawings they too should have noted the discrepancy. It was in fact noted by Herlitz [sic] superintendent when he physically observed some plumbing work in the ground preparatory to pouring the slab in Building B. Something about it did not look proper and he then went and compared what was in place with the architectural drawing and noticed the transition [sic]. He then looked at the mechanical drawing and found that the plumbing in place was in accord with the mechanical drawing.
"Matherne's plans also called for the installation of a television cable conduit and outlet on a specified wall in each guest room. For reasons never fully explained, except for a letter from the electrical subcontractor to Herlitz stating that it did not `pickup TV outlets and conduits feeding them' Matherne concluded after construction was substantially completed that this conduit was not in place. In fact, it is and has always been in place in exact accordance with his plans and specifications. The purpose of the letter from the subcontractor to Herlitz was apparently to advise that this item had not been included by it in its bid.
"After discussion with the owner, contractor (who should have known the conduit was in place) and television cable company, Matherne determined that the television cable should be run through the telephone cable conduit on the opposite wall from whether [sic] it was intended to be, thence across the floor under the carpet to the proper wall. The television cable company required that its cable be protected where it crossed the floor by a rigid conduit. It was so installed resulting in a ridge in the carpet across the floor of each affected room. Matherne issued the necessary change order to accomplish this. Mr. DeBlanc, Hotel's Secretary-Treasurer, approved the change.
"The construction contract between Hotel and Herlitz was prepared by Matherne.
"Matherne was paid by Herlitz on a time basis out of funds paid by Louisiana National Bank, the interim lender, to Herlitz from the interim loan made by Louisiana National Bank to Hotel. In other words, as the contractor made periodic draws against the contract price for work done, a portion of those funds were [sic] paid by the contractor to the architect.
"Louisiana National Bank employed an architect to inspect the job periodically and approve or disapprove Herlitz's periodic requests for payment as the job progressed. *1040 This inspecting architect was paid out of Hotel's interim loan funds.
"In early to mid-March, 1980, after New Orleans [Federal] made an inspection of the hotel prior to the closing of its permanent financing loan, it notified Hotel, Herlitz and Matherne that it did not consider Items 14 and 15 of the loan commitment complied with since `substantial alterations' had been made to the approved plans and specifications consisting principally of the above referenced room layout and television cable problems without its approval and it declined to go forward with the loan until these were made to conform to the approved (original) architectural plans. This was not done and the loan commitment ultimately expired in late April, 1980. Article 14 provides that changes may be made in the previously approved plans only if recommended by the Architect and/or Contractor and only with approval of New Orleans [Federal].
"Hotel then sought permanent financing elsewhere but was unsuccessful. Finally, as part of the settlement of a lawsuit between Hotel and New Orleans [Federal], a permanent financing loan by New Orleans [Federal] to Hotel at 17¼% interest was made. The present value of the additional interest costs to Hotel of the new permanent financing from the original proposal, based upon the same principal amount as the original proposal and discounted to present value is approximately $700,000.00.
"The original permanent financing commitment expired in late April, 1980. Hotel continued to pay interim interest to Louisiana National Bank until the negotiated settlement loan with New Orleans [Federal] was closed. A diligent search of the exhibits and the Court's notes on the testimony (this opinion is being written without waiting for the transcript of testimony) does not establish the amount thereof.
"As to the reconventional demand of Matherne against Hotel, the following additional pertinent facts are proven:
"Matherne entered into an agreement with Hotel to furnish services to it in connection with the furniture, fixtures and equipment for the hotel. This was separate from any sevices [sic] he rendered in connection with the design and building of the structure. He prepared a written contract with Hotel for these services and sent it to Hotel. It was never executed. This contract (defendant's exhibit 24) provided, inter alia, that Matherne would be paid monthly on a time and material basis plus certain multiples to be applied to reimburseable [sic] expenses as defined therein in Article Four.
"Matherne's bills which were sent to Hotel for his services in connection with the furniture, fixtures and equipment through September 20, 1979, included no multiple charged for Matherne's own time (although the appropriate multiple was changed for all other items) and he now seeks to recover that sum ($6,398.75) by reconventional demand. Additionally, he seeks to recover for the invoices sent by him thereafter in connection with this same work totaling $5,810.34 which include the stated multiple applied to his time. Earlier billings were paid and included the multiple for all items except Matherne's time."

HOTEL'S NEGLIGENCE
Herlitz contends that the trial court erred in finding Hotel Investors contributorily negligent, and, in the alternative, even if Hotel Investors was negligent, its contributory negligence was not the proximate cause of its damages.
Herlitz, as the assignee of Hotel Investor's claims against Matherne, has standing in this lawsuit. An assignee acquires no greater rights than its assignor. Salsul Company v. Kohlmeyer et al., 325 So.2d 858 (La.App. 4th Cir.1976), writ denied, 330 So.2d 281 (La.1976); Wailes v. Citizens Bank of La., 23 La.Ann. 524 (La. 1871). All defenses available against the assignor are likewise available against the assignee. Dugas v. Lewis-Chambers *1041 Const. Co., 185 So. 59 (La.App.Orl.1938), annulled, 187 So. 117 (La.1939); Young v. Cistac, 157 La. 771, 103 So. 100 (1925).
The trial court concluded that Hotel Investors was responsible, once Matherne advised it of the changes, for notifying and securing New Orleans Federal's approval for changes in the plans and specifications; and that Hotel Investors failure to notify and obtain this approval was the legal cause for the loss of the loan commitment.
Contributory negligence is a factual determination to be considered under the circumstances of each case. Bordelon v. Southern La. Health Care Corp., 467 So.2d 167 (La.App. 3rd Cir.1985), writ denied, 469 So.2d 989 (La.1985). Factual determinations by the trial court should not be disturbed on review in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). For contributory negligence to bar recovery it must be established that such negligence was the cause-in-fact of the harm. Breithaupt v. Sellers, 390 So.2d 870 (La.1980). Negligent conduct is a cause-in-fact of harm if it was a substantial factor in bringing about the harm. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).
After a careful study of the record, we find that the trial judge's determination that the contributory negligence of Hotel Investors was the cause-in-fact of its damages is amply supported. We adopt the trial court's well considered reasons for judgment as our own, which state:
"Hotel seeks recovery from Matherne alleging breach of contract and, in the alternative, negligence. There was no contract between them as to the construction of the Hotel. There can therefore be no recovery for breach of contract.
Matherne's negligence is overwhelmingly proved as to both the variance in his drawings and the failure to ascertain whether or not the television cable conduit was in fact in place before recommending an alternate means of installation. Both these activities fall well below the standard of professional competence which Hotel had a right to expect of him and constitute a breach of the duty which he owed to Hotel.
Although Hotel had no contract with Matherne it had the right to rely upon him to exercise that degree of professional competence normally exercised by architects in the area.
Hotel's failure to build the structure according to the plans and specifications previously approved by New Orleans [Federal] was a breach of Article 14 of the [loan] commitment.
The responsibility for obtaining New Orleans [Federal's] prior approval for changes in the plans and specifications was Hotel's, not Matherne's. Hotel failed to do this despite the fact that its President, Mr. Mancuso, had been notified of the changes and specifically reminded by Matherne of the necessity to get approval. Additionally, Mr. DeBlanc, the secretary-treasurer of Hotel, participated fully in the television conduit discussion and consented to Matherne's suggestion on behalf of Hotel and, therefore, was aware that a change was being made. It was the failure to get New Orleans [Federal's] prior approval of the changes which was the legal cause of the loss of the [loan] commitment. All evidence is to the effect that the changes were minor and, therefore, had prior approval been sought, it would in all probability have been obtained. Had it been sought and denied, an appropriate corrective measure could have been taken at that time. The failure to do this is Hotel's failure and Hotel's responsibility."
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Herlitz Construction Company.
AFFIRMED.